# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-4180

_____

| | |
|---|---|
| Nicky R. Rehder, | * |
| | * |
| Appellant, | * |
| | * |
| v. | * Appeal from the United States |
| | * District Court for the Southern |
| Kenneth S. Apfel, Commissioner | * District of Iowa. |
| of Social Security, | * |
| | * |
| Appellee. | * |

_____

Submitted: November 17, 1999

Filed: March 7, 2000

_____

Before RICHARD S. ARNOLD, FLOYD R. GIBSON, and BEAM, Circuit Judges.

_____

FLOYD R. GIBSON, Circuit Judge.

Nicky R. Rehder appeals the district court's[1] judgment affirming the Social Security Administration's denial of her application for social security disability insurance pursuant to 42 U.S.C. § 423 (1994) and supplemental security income (SSI) benefits pursuant to 42 U.S.C. § 1381(a) (1994). We affirm the denial of benefits.

---

[1]The HONORABLE CHARLES R. WOLLE, United States District Judge for the Southern District of Iowa.

Further, subsequent to the filing of this appeal, Rehder filed a motion to remand the case for consideration of new and additional evidence. We deny the motion.

## I.    BACKGROUND

Nicky Rehder, at the time of her benefits application, was a forty-nine year old woman with a history of alcohol and prescription drug abuse and mental health problems. Her past relevant work included employment as a waitress and a mail clerk or sorter. Rehder has not been gainfully employed since December of 1994.

Rehder applied for disability insurance benefits and SSI benefits on July 27, 1995. In her application, Rehder claimed that she suffered from a mental impairment described as an atypical affective disorder and degenerative back and leg impairments. Rehder cited February 1, 1995, as the onset date of her disability. The Social Security Administration denied Rehder's application initially and upon reconsideration. Rehder requested and, on May 30, 1996, received a hearing before an Administrative Law Judge (ALJ).

At the hearing, Rehder presented the following evidence to the ALJ. In January of 1995, Rehder was diagnosed with severe degenerative changes at C4-5 and C5-6 disk spaces in her spine and Grade 1 spondylolisthesis at C3-4. Between February of 1995 and December of 1996, Rehder was hospitalized twice for mental disorders. Rehder regularly complained of "black outs," panic attacks, and pain in her legs and spine. Rehder saw her treating physician, Dr. Robert Smith, regularly during that same time period, largely for treatment of her mental impairments.

Rehder categorically denied using illicit drugs or abusing prescription drugs during the relevant time period. Throughout the relevant period Dr. Smith regularly noted in Rehder's file that her substance abuse appeared to be "in remission." Julie Montgomery, Rehder's community service counselor, testified that she had no

indication that Rehder had been using any illicit drugs. Rehder submitted a letter from her social worker recommending that Rehder be placed in a "supported living" environment due to her mental lapses.

Despite the evidence presented by Rehder that she was no longer abusing drugs, several events occurred during the relevant time period which cast doubt upon Rehder's veracity regarding her drug use. On February 14, 1995, an extremely agitated and anxious Rehder was admitted to the hospital. Her symptoms included a three-day period without sleep and feeling "hyper." Rehder told the admitting staff that her hyperactivity felt like "taking speed" and that she felt she had "begun to come down." Rehder refused to undergo a physical exam or provide a urine sample and was somewhat irritable and evasive to the staff during questioning.

Dr. Smith's notes on this hospitalization reveal that his previous diagnosis of Rehder, made on February 1, 1995, had been "atypical bipolar type II disorder versus cyclothymia versus dissociative disorder versus PTSD with strong suspicion of an Axis II component and all complicated by historical diagnosis of alcohol and stimulant dependency." The admitting physician's diagnosis of Rehder following her February 14 hospitalization was "rule out dissociative disorder with amnestic spells versus bipolar type II versus cyclothymia[, h]istory of polysubstance abuse."

Rehder was next admitted to the hospital on June 14, 1995. Des Moines police officers brought Rehder to the hospital after she had made repeated telephone calls to the police about an apparently non-existent intruder. Rehder was extremely upset when she arrived at the hospital but was eventually convinced to sign herself in to the Crisis Center. Dr. Smith's notes on this hospitalization state that Rehder suffered from an acute onset of lack of sleep and associated delusional ideation.

Urine drug screen results, received after Rehder was discharged from the hospital against medical advice, revealed a small amount of cocaine metabolite and

ephedrine in Rehder's system. However, even prior to receiving the confirming urinalysis, Dr. Smith's treatment notes reveal that he questioned Rehder's truthfulness concerning her illicit drug use. His diagnostic assessment stated "[s]trongly suspect substance induced, psychotic disorder with mixed delusions and hallucinatory experience. . . [r]ule out functional etiology." Dr. Smith's treatment notes of Rehder's follow-up appointment on June 23, 1995, further highlight his suspicion that Rehder was abusing illicit drugs. Dr. Smith's notes state that he suspected stimulant drug use had contributed to Rehder's primary symptoms of anxiety and panic, despite her denials.

From his notes of a November 1, 1995, visit with Rehder, Dr. Smith apparently still suspected illicit drug use by Rehder. Dr. Smith's diagnosis of Rehder's condition included "substance dependency, alcohol . . . stimulants . . . sedative, hypnotics in alleged remission by the patient."

Dr. Smith's notes from April of 1996 again indicate that he is not convinced of Rehder's veracity regarding her drug use. Dr. Smith stated that Rehder looked tired or over-medicated during the visit. Further, Dr. Smith's notes indicate that Rehder had called for a refill prescription of Diazepam, a form of Valium, even though she should have had over a month's supply left. Dr. Smith opined that Rehder's use of habituating drugs should be carefully monitored.

In late May and early June of 1996, Dr. Smith's notes reveal his uncertainty regarding Rehder's compliant use of prescription drugs. Dr. Smith stated that Rehder did not show up for an appointment to have her blood checked for levels of prescription drugs in early May and offered only a vague explanation for her failure. He further stated that he suspected Rehder was both undertaking and over-utilizing her prescription drugs.

Finally, in August of 1996, Rehder was admitted to the hospital for a twenty-three hour observation period. The admitting staff's notes characterized Rehder as uncooperative and confused with a "thick tongue" and unsteady on her feet. The admitting physician's treatment notes state that he doubted that her symptoms were real, citing as support inconsistent changes in her memory. Rehder was again discharged against medical advice.

The ALJ issued an unfavorable opinion on Rehder's application on December 12, 1996. The ALJ applied the requisite five-step sequential analysis to determine Rehder's disability status. See 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f) (1999). The ALJ found that, although Rehder suffered from moderately severe degenerative changes at multiple levels of her spine, spondylosis and possible minimal disc herniation in the lumbar spine, an atypical affective disorder, and a history of substance abuse, her impairments did not meet or equal a listed impairment. The ALJ did not find Rehder's subjective complaints of pain or her denials of drug use fully credible. The ALJ then concluded that, if Rehder's substance abuse was not considered, her impairments did not prevent her from returning to her past relevant work as a mail clerk or sorter.[2] However, the ALJ found that, if Rehder was abusing drugs, she would be unable to engage in gainful employment. Consequently, the ALJ denied Rehder's application for benefits, concluding that Rehder's substance abuse would be material to a finding of disability.

The Appeals Council denied Rehder's timely request for review of the ALJ's determination, thereby rendering the denial of benefits the final decision of the Commissioner. Pursuant to 42 U.S.C. § 405(g) (1994), Rehder appealed to the district court. The district court affirmed the Commissioner's denial of benefits. Rehder filed

[2]Due to a lifting restriction of no more than 20 pounds and a low-stress environment limitation, the ALJ determined that Rehder could no longer perform her past relevant work as a waitress.

this appeal, along with a motion to remand for the consideration of new and additional evidence.

## II.  DISCUSSION

Our review of the Commissioner's decision on appeal is limited.  We will affirm the decision of the Commissioner if it is supported by substantial evidence.  See 42 U.S.C. § 405(g) (1994).  Substantial evidence is that which a reasonable mind would find adequate to support the Commissioner's decision.  See Jackson v. Apfel, 162 F.3d 533, 536 (8th Cir. 1998).  We may not reverse merely because substantial evidence would have supported the opposite conclusion.  Id. at 537.

Rehder raises two issues on appeal.  First, Rehder argues that there is insufficient medical evidence of her substance abuse to sustain the ALJ's finding that drug addiction was a contributing factor material to the determination of disability.  Thus, Rehder argues that the ALJ's decision is not supported by substantial evidence.  Rehder also argues that she is entitled to a remand of this case based on material new evidence which was unavailable to her until after the Appeals Council's review.

### A.  Materiality Determination

The parties agree that the recently enacted Contract with America Advancement Act of 1996 (CAAA), codified at 42 U.S.C. § 423(d)(2)(C) (Supp.III 1997),[3] applies to this case.[4]  Section 423(d)(2)(C) provides that an individual shall not be considered

---

[3]Section 423(d)(2)(C) applies to applications for disability benefits.  An identical provision, 42 U.S.C. § 1382c(a)(3)(J), applies to SSI applications.  For simplicity's sake, we refer only to § 423(d)(2)C) throughout this opinion.

[4]As Rehder's application was pending on March 29, 1996, when the CAA A was enacted, the Act's provisions apply to her case.  See Technical Amendments Relating

disabled for Social Security purposes "if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."  The regulations implementing § 423(d)(2)(C) are found at 20 C.F.R. § 404.1535 (1999).[5]

Section 404.1535(a) provides that if the Commissioner finds that the claimant is disabled and has medical evidence of the claimant's drug addiction or alcoholism, the Commissioner "must determine whether . . . drug addiction or alcoholism is a contributing factor material to the determination of disability."  Section 404.1535(b) explains that the "key factor" in determining whether drug addiction or alcoholism is a contributing factor material to a determination of disability is whether the claimant would still be found disabled if he or she stopped using drugs or alcohol.  See 20 C.F.R. § 404.1535(b)(1).

A two-step analysis is required to make that determination.  First, the ALJ should determine which of the claimant's physical and mental limitations would remain if the claimant refrained from drug or alcohol use.  Then, the ALJ must determine whether the claimant's remaining limitations would be disabling.  See 20 C.F.R. § 404.1535(b)(2).  If the claimant's remaining limitations would not be disabling, the claimant's alcoholism or drug addiction is a contributing factor material to a determination of disability and benefits will be denied.  See 20 C.F.R. § 404.1535(b)(2)(i).  If the claimant would still be considered disabled due to his or her

_____

to Drug Addicts and Alcoholics, Balanced Budget Act of 1997, Pub.L. No. 105-33, §§ 5525, 5528, 111 Stat. 251, 624-25 (clarifying that the CAAA amendments apply retroactively to all non-final cases).

[5]As with the statutory provisions, two identical sets of regulations have been enacted.  Section 404.1535 applies only to applications for disability benefits.  The regulations for SSI applications are found at 20 C.F.R. § 416.935.  For expedience and consistency we refer only to § 404.1535 throughout this opinion.

remaining limitations, the claimant is disabled and entitled to benefits.  See 20 C.F.R. § 404.1535(b)(2)(ii).

Rehder argues that the ALJ was not presented with sufficient medical evidence of her drug use to support the ALJ's determination that drug addiction was a contributing factor material to the determination of disability.  Rehder claims that the ALJ erroneously relied on two isolated incidents in rendering her decision:  the hospitalization in June of 1995 and the Diazepam refill incident in April of 1996. These isolated incidents, according to Rehder, do not constitute "medical evidence" of drug addiction as required by § 404.1535.  Rehder invites us to construe the term "medical evidence" in § 404.1535 as necessitating a medical diagnosis of substance abuse disorder.  We must decline.

Social Security regulation 20 C.F.R. § 404.1512 defines evidence, in pertinent part, as "[o]bjective medical evidence, that is, medical signs and laboratory findings as defined in § 404.1528(b) and (c)."  Section 404.1528(b) defines medical signs as "anatomical, physiological, or psychological abnormalities which can be observed . . . shown by medically acceptable clinical diagnostic techniques [and] . . .  shown by observable facts that can be medically described and evaluated."  Laboratory findings are "anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques."  20 C.F.R. § 404.1528(c).  Pursuant to these definitions, we conclude that sufficient medical evidence of Rehder's drug use was presented to the ALJ to support her decision.

As recounted in Section I above, Rehder's medical records contain several substance-related diagnoses.  Further, laboratory tests confirm substance abuse by Rehder at least once during the relevant period.  While it is true that several of Rehder's

diagnoses stated that her substance abuse was in remission, those diagnoses were also considered, and to some extent discounted, by the ALJ.[6]

We do not believe, as Rehder asserts, that the ALJ substituted her opinion for that of the treating physician. Rather, as we review the record, we find that the ALJ gave careful consideration to all of the evidence before her. The ALJ relied upon Dr. Smith's treatment notes, her own credibility determination of Rehder's testimony, and non-treating state agency consultants in reaching her decision that Rehder's abuse of illicit drugs was material to a finding of disability. Although we cannot say, given the facts of this case, that the ALJ's decision to deny benefits was the only tenable one, we have no trouble finding that the decision is supported by substantial evidence. See Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999) ("[w]e may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome."). We therefore affirm the ALJ's denial of benefits.

## B.    Motion for Remand

In her motion for remand, pursuant to 42 U.S.C. § 405(g) (1994), Rehder argues that new and material evidence exists which is probative of her claim that substance abuse was not a contributing factor material to the determination of disability. Rehder's new evidence consists of a Psychiatric Review Technique Form (PRTF) completed by Dr. John Garfield, an agency clinical psychologist, in February of 1998.[7] In the PRTF, Dr. Garfield stated that substance abuse was no longer a factor in Rehder's diagnosis.

---

[6]The ALJ apparently discounted some of Dr. Smith's diagnoses regarding the "in remission" status of Rehder's substance abuse because the ALJ believed those diagnoses were made largely on the basis of Rehder's claims of abstinence - claims the ALJ did not find to be credible in light of the body of evidence to the contrary.

[7]The PRTF was completed as part of Rehder's second application for disability and SSI benefits. Her second application was granted by the Commissioner.

Dr. Garfield did not examine Rehder, but based his opinion on a review of Rehder's medical history. Rehder argues that the PRTF is material evidence that she was not abusing drugs at the time of her first application. We disagree.

We will remand a case for the consideration of new evidence if the evidence is "material and . . . there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. §405(g). Material evidence is that which is "non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied." Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997)(citation omitted).

Dr. Garfield completed the PRTF fourteen months after the ALJ rendered her decision on Rehder's first benefit application. Despite Rehder's assertions, we do not believe that a report by a non-treating psychologist completed fourteen months subsequent to the relevant time period constitutes material new evidence warranting a remand of this case. The PRTF is not probative of Rehder's condition between February 1, 1995, and December 12, 1996. Further, as Dr. Garfield's opinion was based upon his review of Rehder's medical records, records which the ALJ also reviewed thoroughly, we do not find a reasonable likelihood that a remand of this case would result in an award of benefits for the relevant time period.[8] See Woolf v. Shalala, 3 F.3d 1210, 1215 (8th Cir. 1993). Thus, Rehder's motion for remand is denied.

**III. Conclusion**

---

[8]As we noted supra in Section IIA, the ALJ apparently discounted Dr. Smith's characterizations of Rehder's substance abuse as "in remission" because she believed those diagnoses were based largely on Rehder's uncorroborated statements to her doctors which the ALJ found not to be credible.

For the foregoing reasons, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.